CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 JUL 25 AM 8:33

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ALVIS ARMONTROUTT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-01031-O-BL |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner | § | |
| of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Alvis Armontroutt seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this Court recommends that the Commissioner's decision be affirmed and Armontroutt's case be dismissed.

## I. STATEMENT OF THE CASE

Armontroutt filed applications for SSI and DIB on August 27, 2010, alleging impairments that were disabling as of September 18, 2009. Those applications were denied initially on December 20, 2010 and again on reconsideration on March 25, 2011. Armontroutt requested a hearing, which was held before an Administrative Law Judge on July 12, 2013 by

video, with Armontroutt in Fort Worth, TX and the ALJ in Oklahoma City, OK. The ALJ issued a decision on August 27, 2013, finding Armontroutt not disabled.

Specifically, the ALJ established during step one that Armontroutt had not engaged in substantial gainful activity since September 18, 2009. (Doc. 12-3, 17). At step two, the ALJ determined Armontroutt had the severe impairments of degenerative disc disease, a right shoulder rotator cuff injury, cataract of the left eye, and mild degenerative changes in the left knee. (Doc. 12-3, 17). In step three, the ALJ found that Armontroutt did not meet or equal in combination one of the impairments listed in 20 C.F.R. § 404(p). (Doc. 12-3, 18). The step three analysis continued, with the ALJ ruling that Armontroutt retained the residual functional capacity to

> lift and carry 20 pounds occasionally and 10 pounds frequently[,] ... sit for about six hours ... [and] stand and walk for about six hours during an eight-hour workday[,] ... occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl[,] ... occasionally reach overhead[,] ... [and] frequently handle and finger with his right upper extremity.

(Doc. 12-3, 18). At step four, the ALJ concluded Armontroutt was unable to return to past relevant work, and at step five ruled the Administration met its burden by showing there were sufficient jobs in the economy which Armontroutt could perform, and that Armontroutt was therefore not disabled. (Doc. 12-3, 22-23).

Armontroutt applied to the Appeals Council for review, which denied that review on October 21, 2014. Therefore, the ALJ's ruling is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[t]he Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

According to his pleadings, testimony at the administrative hearing, and the administrative record, Armontroutt was 50 years old and living with his wife at the time of the administrative hearing. He had completed some high school but failed one GED attempt. His previous employment consists of work in an oil field. He complains that his physical impairments and mental limitations render him disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). "Substantial gainful activity is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a "five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to

steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence is "more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452. The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

Armontroutt raises two issues on appeal. He claims that the ALJ made various errors in weighing medical opinions and posed a defective hypothetical question to the vocational expert. He further argues that these alleged defects, individually or in combination, render the ALJ's decision unsupported by substantial evidence.

## A. Medical Opinion Evidence and Residual Functional Capacity

Armontroutt claims the ALJ failed to properly consider the evidence offered by medical sources in establishing the RFC finding. (Doc. 16, 10-11). The first such source is Dr. Bruce Howell, an optometrist who assessed Armontroutt with a cataract and prescribed eyeglasses and recommended surgery when Armontroutt could afford it. (Doc. 16, 11; Doc. 12-9, 28). Armontroutt argues that the opinion of Dr. Howell must have been given no weight and disregarded entirely as the RFC has no visual limitations. (Doc. 16, 11).[1] He alleges that this is reversible error, as Dr. Howell's opinion is that of a treating source and must be analyzed under *Newton* if rejected. (Doc. 16, 11-12; 209 F.3d at 453).

"[A]bsent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under ... 20 C.F.R. § 404.1527(d)(2)."[2] *Newton*, 209 F.3d at 453. Although opinions from medical sources must be considered by the ALJ "on issues such as whether ... impairment(s) meet[ ] or equal[ ] the requirements of any impairment(s)" listed, RFC and the application of vocational factors are to be decided solely by the Commissioner. 20 C.F.R. § 404.1527(d)(2).

In § 416.927 the Commissioner tells claimants that "[g]enerally, we give more weight to opinions from your treating sources .... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 416.927.

---

[1] As noted above, the ALJ determined that one of Armontroutt's severe impairments was this left eye cataract
[2] In quoting this same case law, Plaintiff substitutes 20 C.F.R. § 416.927 where the original opinion references § 404.1527(d)(2). Absent case law indicating that *Newton* also requires full analysis under § 416.927, this court declines to expand the impact of *Newton* in the way Armontroutt appears to desire.

Aromontroutt asserts *Newton* requires ALJs to thoroughly analyze the opinion of treating sources any time they are not given controlling weight. This runs directly counter to the language of *Newton*, which states that the ALJ is entitled to rely on contradictory evidence from other treating or examining sources in making RFC assessments and applying vocational factors. 209 F.3d at 453. The ALJ is certainly required to analyze medical opinions consistent with 20 C.F.R. § 416.927, but is not bound by *Newton* to do so explicitly in the text of every decision where the RFC does not mirror perfectly a claimant's interpretation of the opinion of a treating or examining source.

An ALJ need not specifically list evidence accepted and rejected in reaching findings. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). So long as the findings of the ALJ are supported by more than a scintilla of evidence in the record, the decision of the ALJ must be affirmed. *Newton*, 209 F.3d at 452. So Armontroutt's duty is not to show that Dr. Howell, or any other source, may have provided evidence which might be read as contradictory to the RFC finding, but rather that there is no evidence in the record supporting that RFC determination. In other words, Armontroutt needs to show that there is no basis in the record for the ALJ's determination that he "does not meet Listing 2.02 Impairment of Visual Acuity because his remaining vision in the better eye after best correction is not 20/200 or less." (Doc. 12-3, 18). As Armontroutt has failed to do so, there is no reason to find the ALJ's decision regarding vision is unsupported by substantial evidence.

Armontroutt also argues that the ALJ erred in giving little weight to the opinion of Dr. Robert Newberry. The ALJ determined Dr. Newberry's "opinion is not consistent with medical imaging or subsequent opinions [and] ... not consistent with eye examinations provided by optometrists...." (Doc. 16, 12; Doc. 12-3, 21). It is unclear what limitation assessed by Dr.

Newberry Armantroutt believes should have been incorporated into the RFC. Armontroutt notes that "Dr. Newberry's opinion is completely consistent with the record" except for whether Armontroutt has the ability to lift either 10 or 20 pounds, but then later asserts that it was harmful and prejudicial error to fail to weigh "this conflicting evidence." (Doc. 16, 13). As the RFC states that Armontroutt can lift 20 pounds only occasionally, this is not sufficient conflict to show harm in any error in the weight assigned to Dr. Newberry's opinion when other sources assess Armontroutt as capable of lifting 20 pounds on occassion. (Doc. 12-3, 18; Doc. 12-9, 10). Again, Armontroutt's burden is to show that there is no substantial evidence supporting the RFC assessment, or that an error in application of the law by the ALJ was not harmless, not to highlight record evidence that may tend to contradict a finding of the ALJ.

An error is harmless if correcting it would not produce a different result and prejudicial if it would. *See Mays v. Bowen*, 837 F.2d 1362 (5th Cir. 1988) ("The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time. Remanding this case ... would produce the same result while wasting time and resources.") (internal citation omitted). So Armontroutt needs to show either that the ALJ decision is unsupported by anything other than a scintilla of evidence or that reversing an alleged legal error would cause a determination of disability. It is insufficient to merely allege that an ALJ erred in assigning weight to the opinions of medical sources without showing that properly weighting those sources would result in a finding of disability.

Finally, Armontroutt makes a similar argument about the opinion of Dr. Pamela Aird, which the ALJ assigned little weight. (Doc. 16, 14). Rather than illustrating a limitation assessed by Dr. Aird which was not incorporated into the RFC, however, he again argues that failure to specifically explain why this decision was given this weight necessitates remand. Again, absent a

showing that Dr. Aird assessed a limitation which was not incorporated into the RFC and renders the RFC unsupported by substantial evidence or demonstrates that explicitly setting out reasons for giving little weight to Dr. Aird's opinion would have resulted in a finding of disability, the ALJ's decision must be affirmed.

### B. Hypothetical Question and Vocational Expert Testimony

The hypothetical question posed by an ALJ to a VE should reasonably incorporate the claimant's limitations as recognized by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). The burden shifts at step five, so that the ALJ must show that there are sufficient jobs in the economy a claimant can perform. *Waters*, 276 F.3d at 718. Armontroutt claims that defects in establishing the RFC which were incorporated into the hypothetical question posed to the VE are fatal to the determination that work exists which he can perform. (Doc. 16, 4). As above, Armontroutt has not established any limitation offered by a medical source which should have been incorporated into the RFC but was not.

Armontroutt asserts that the ALJ's failure to include a visual impairment in the hypothetical question posed to the VE faults the ALJ determination that there are sufficient jobs he can perform. (Doc. 16, 9). However, at the hearing, the VE testified in response to a question about visual limitations that "as long as there is one good eye any jobs that don't require moving and work[ ] like driving [Armontroutt's ability to perform these jobs] would not be affected by even the total loss of one eye." (Doc. 12-3, 51). So, without demonstrating that the ALJ's determination about the use of the more capable eye was unsupported by the record, any error here is definitively harmless.

Armontroutt further argues that the RFC determination should reflect certain educational limitations, and that he cannot perform the jobs offered by the VE and adopted by the ALJ

because of those educational limitations. (Doc. 16, 5). He specifically alleges that he is not capable of performing any job with requiring mathematical skills at level one or higher. (Doc. 16, 7). However, the Commissioner notes that Armontroutt worked for ten years as a roustabout in the oil fields, which requires a math level of one according to the DOT. (Doc. 17, 9; Dictionary of Occupational Titles #869.684-046).[3] Although the ALJ found the physical requirements of this work are beyond his capabilities, Armontroutt has not shown any changes since that time such that he is no longer capable of meeting those mental demands. "Work you have already been able to do shows the kind of work you may be expected to do." 20 C.F.R. § 416.965(a).

One of the jobs suggested by the VE and adopted by the ALJ is that of a sales attendant, which also requires ability with math at level one. Dictionary of Occupational Titles #299.677-010. Armontroutt complains mainly that his educational limitations should prevent him from being categorized as having any capability with math at all, while his previous experience shows he's able to perform in workplaces requiring only a minimal amount of mathematical acuity. Armontroutt testified at the administrative hearing he had minimal competency with math, stating he could make change but had trouble with some multiplication and division. (Doc. 12-3, 36-37). Without a showing that his mental capabilities have declined since his work in the oil fields or other evidence indicating his inability to perform simple arithmetic, the ALJ was correct in finding that he was capable of performing this job.

Although Armontroutt argues that the reading and reasoning requirements of all jobs offered by the VE are also beyond his capabilities, he does so only generally. (Doc. 16, 7). The VE heard Armontroutt's entire testimony at the hearing and reviewed his records and believed

---

[3] Armontroutt asserts that the VE classified the job he performed previously as an oil field laborer (Dictionary of Occupational Titles #939.687-018) also with a math level of one.

that he was capable of performing these jobs. (Doc. 12-3, 48). The ALJ relied on that specific and expert determination, and Armontroutt must show that there is no basis in the record for finding him so capable, not argue *post hoc* that he's incapable of the jobs testified to with little record evidence of mental inabilities outside of one failed GED exam. If Armontroutt cannot show where in the record the ALJ should have found a basis for his incapacity to perform basic reasoning, simple mathematics like making change, or understand written passages, then it is no failure for the ALJ to decline to assess such limitations.

## V. CONCLUSION

Because Armontroutt has not shown that there are limitations, either medical or educational, which should have been but were not incorporated into the RFC and hypothetical question, he has not shown that the ALJ's decision is unsupported by substantial evidence or the result of incorrect legal standards. Therefore, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docked of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will

bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated July 25, 2016.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**